ELIZABETH ECKELMANN, also known as LIZZIE ECKELMANN, a person of unsound mind, by PAUL S. LIMERICK, Public Administrator of St. Louis County, her Successor Guardian, Appellant, v. MARGARET A. LUECKING, also known as M. A. LUECKING, CHARLES H. LUECKING, Trustee Under Deed of Trust for M. A. LUECKING and MINNIE GUMZ.—130 S. W. (2d) 471.

Division One, July 7, 1939.

*Robert M. Zeppenfeld* for appellant.

*Taussig & Luecking* and *Charles H. Luecking* for Margaret A. Luecking and Charles H. Luecking.

GANTT, J.—On May 5, 1933, plaintiff was adjudged of unsound mind, and the public administrator of St. Louis County was appointed her guardian. She then instituted, by her guardian, this action in the Circuit Court of St. Louis County, seeking the cancellation of a trustee's deed, deed of trust and warranty deed purporting to convey Lot 1 of Eckelmann's Sub-division in Section 29, Township 44-N, Range 6-East, containing 10.544 acres in said county.

Defendant Minnie Gumz is a sister and defendant Margaret A. Luecking a cousin of plaintiff. Defendant Charles H. Luecking is a son of Margaret A. Luecking.

The trial continued for quite a period of time. For reasons unexplained, the evidence was heard from time to time at adjourned sessions of the court. On March 18, 1935, the court entered judgment dismissing plaintiff's petition and she appealed.

It will not be necessary to summarize the pleadings. They present only the issues of plaintiff's sanity and the equities of the case.

The facts as shown by the evidence follow: In 1913 Bernard Eckelmann, the father of plaintiff, died. The record is silent as to the death of her mother. At the time of the father's death he owned a small amount of personal property and sixty-three acres of land in St. Louis County. Edward P. Luecking, a nephew of the deceased and a brother of Margaret A. Luecking, administered upon the estate. The six children, Frederick, Wm. F., Louis H., and Elizabeth (Lizzie) Eckelmann, and the married daughters, Lena Uhlmansiek and Minnie Gumz, voluntarily partitioned the land into six lots. Lot 1, the land in controversy, was conveyed to Lizzie. Lot 2 was conveyed to Minnie Gumz. A lot was conveyed to each of the other children. The nephew Edward P. Luecking prepared the partition deeds and took the acknowledgments of the children to the same.

Plaintiff, the youngest child and unmarried, was thirty-seven years old at the time of her father's death. At said time and as long as he lived she resided with him. As the other children grew to manhood and womanhood, they married and left home. Plaintiff attended school until she was fourteen. She worked, for a few months, as housemaid in the City of St. Louis when about seventeen and then returned to her father's home. She had school acquaintances with whom she associated during her school days, and for a number of years thereafter. She kept company with no young man but attended social gatherings and picnics accompanied either by neighbors or members of her family. Some time after the other children left the home the neighbors noticed that she made queer and unusual noises and that she developed a shyness especially of strangers. She excluded herself from others who approached or came upon the farm by retreating to the house. In other words, she discontinued her association with former acquaintances and neighbors. They regarded her as a person of unsound mind. It should be stated that during the time she lived alone with her father, she did the house work and occasionally worked in the field.

All of her brothers and sisters, except Frederick, testified as witnesses in this case. After marriage, the brothers and sisters and a few distant relatives made infrequent visits to the old home. Generally said visitors remained only for fifteen or twenty minutes to exchange greetings and inquire how the father and daughter were getting along. Of course, none of the visitors could detail conversations had with either Lizzie or her father on these occasional visits. The children, except Minnie Gumz, testified that on said visits Liz-

zie appeared to be of sound mind. The father's death presented the question of what should be done about Lizzie. Finally it was agreed that she would live with her widowed sister Minnie Gumz. After Minnie Gumz took charge of Lizzie they resided for sometime at different places in the county. In the meantime, and prior to 1922, Minnie Gumz, encouraged and aided by her son Albert Gumz, borrowed, at different times, money amounting to about $400 from her cousin Margaret A. Luecking. She promised Margaret that she would not mortgage Lot 2 which she inherited from her father. In 1922 Minnie Gumz decided to build a residence on said Lot 2. She applied to Margaret A. Luecking for a loan of $3300 for that purpose. She again promised Margaret that she would not mortgage Lot 2. Margaret loaned her said sum of money for which Minnie Gumz gave three notes, without security, payable to Margaret. On completion of the house in February, 1923, Minnie Gumz and Lizzie moved into the same and have continuously resided therein since that time. Later it was discovered that the house had been built on Lizzie's Lot 1, and near the line between Lots 1 and 2. Naturally Margaret A. Luecking was excited and exercised about the matter. In this situation and in August, 1924, Minnie Gumz went to the office of Edward P. Luecking in the City of St. Louis and asked him to prepare a deed conveying Lizzie's lot to her. He testified with reference to Minnie's visit as follows:

"Q. Do you know any reason why you did not handle this deal? A. She came in and asked me—she said, 'I want Lizzie to give me a deed to her ten acres;' I asked her, 'Where is Lizzie now? and she said, 'She is locked up in the house,' and that is the reason why I wouldn't take it.

"Q. That is the reason you would not take it? A. Yes, she said she wanted Lizzie to give her a warranty deed and she said she had her locked up in the house when I asked her, 'Where is Lizzie now?'

"Q. You did not want anything to do with the transaction for that reason, is that what I understood? A. Yes, sir."

In a few days thereafter Minnie Gumz engaged the services of Alfred S. Zeller, a notary public, who went to Minnie's home and took the acknowledgment of Lizzie to a warranty deed purporting to convey to Minnie Gumz Lot 1 owned by Lizzie. Zeller testified that he was at said home only fifteen or twenty minutes; that he explained to Lizzie in detail the contents of the deed and the effect of its execution; that Lizzie indicated that she understood him and freely signed and acknowledged the deed, which recited a consideration of $1. On the execution of the deed Minnie Gumz placed in Lizzie's hand a $5 gold piece as consideration for the deed. However, she immediately took possession of said gold piece and retained the same. Zeller also testified that in his opinion Lizzie was of sound mind on that day, August 14, 1924.

On cross-examination he admitted that he had no independent recollection about the matter and testified with reference thereto as follows:

"Q. The reason you say now you read this and explained it in detail is that because it is a fixed practice of yours; is that it? A. Yes, it is a fixed practice of mine.

"Q. So you figure you must have done it in this case because you do it in others? A. That is right.

"Q. You do not remember this case as an individual case where you did go into detail? A. No.

"Q. It is just because it is a practice of yours, as you claim, so you must have done it in this case? A. That is correct.

"Q. You cannot recall anything she did outside of signing this paper while you were there? You do not recall whether she was walking or sitting in a chair? You haven't any recollection about that? A. No."

In 1929 Albert Gumz, son of Minnie Gumz, solicited a loan of $6000 from Margaret A. Luecking. She did not want to make the loan. He told her that Mr. Rowe would make the loan if the same was secured by a deed of trust on said Lots 1 and 2. In this situation she loaned $6000 to Minnie Gumz, who gave her a note for $10,742, which included prior unsecured loans made by Margaret A. Luecking to Minnie Gumz. The said note and the semi-annual interest notes were secured by a deed of trust executed by Minnie Gumz November 20, 1929, on said Lots 1 and 2. The $6000 was paid to Albert Gumz.

On default, the deed of trust was foreclosed, and the trustee executed a trustee's deed dated December 1, 1932, conveying said lots to Margaret A. Luecking, who was the purchaser at the foreclosure sale.

Dr. J. A. Youngman, the family physician of Bernard Eckelmann, the father, had known Lizzie for twenty-five years prior to the trial. In substance, he testified that he made an examination of Lizzie in 1923; that she was afraid of him; that she would not answer questions and that he could not converse with her. From a history of the case and his examination he diagnosed her disease as *dementia praecox*, which means that after the age of puberty she had progressively lost intelligence during the ten years prior to the examination, and that she was, in August, 1924, of unsound mind and incapable of transacting the ordinary business affairs of life.

Dr. E. J. Lee, Jr., an expert on nervous and mental diseases, who examined Lizzie the day before the commencement of the trial, testified from a history of the case and his examination of her, that she was afflicted with "an old *dementia praecox*." On the examination he was unable to obtain from her information about anything. She did not know where she was and her mind was a blank. She knew nothing of time, place or persons. It was his opinion that

in August, 1924, and for a number of years prior thereto, that Lizzie was of unsound mind and not capable of transacting the ordinary business affairs of life.

The evidence considered, we are not in doubt about the mental condition of Lizzie. For aught that appears, she never purchased the simplest household article or sold a product of the farm. Furthermore, it is not denied that it was necessary for someone to care for her after the death of the father. At the trial she was both a physical and mental wreck. On August 14, 1924, and for several years prior thereto, she was not mentally capable of transacting business involving the conveyance of real estate.

The judgment is reversed and the cause remanded with directions to set aside the warranty deed mentioned in evidence and set aside the deed of trust and trustee's deed mentioned in evidence, insofar as said deed of trust and trustee's deed purport to convey said Lot 1. It is further directed that the present value of said house built on Lot 1 be determined and that the amount of taxes paid by Margaret A. Luecking on said Lot 1 also be determined, and that the said value of the house and the amount of said taxes be adjudged a lien on said Lot 1 in favor of Margaret A. Luecking. It is further directed that such orders be made with reference to foreclosure on default of payment of the amount of money adjudged a lien on said lot as the court may deem just and proper. All concur, except *Hays*, P. J., absent.